**ORIGINAL**

K

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 2 3 2007

CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE HERITAGE | § | CASE NO. 04-35574-BJH-11 |
| ORGANIZATION, L.L.C. | § | |
| | § | |
| Debtor. | § | |
| | § | |
| _____ | § | _____ |
| AE MARKETING, L.L.C., PREMIER | § | |
| INTERVAL RESORTS, L.L.C., GMK | § | |
| FAMILY HOLDINGS, L.L.C., THE | § | ADVERSARY NO. 04-3624 |
| HERITAGE ORGANIZATION, L.L.C., | § | |
| MICHAEL KORNMAN and GARY | § | 3107CV0321 K |
| M. KORNMAN, | § | |
| | § | |
| Plaintiffs, | § | |
| - against - | § | |
| JENKINS-BALDWIN CORPORATION, | § | |
| MERALEX, L.P., REVANCHE, L.L.C., | § | |
| and HOWARD M. JENKINS, | § | |
| | § | |
| Defendants, | § | |
| - against - | § | |
| | § | |
| LIFE UNDERWRITERS OF AMERICA | § | |
| INC., HILLEL A. MEYERS, THOMAS | § | |
| K. RUSSELL, AND DOUGLAS G. | § | |
| SAUNDERS, | § | |
| | § | |
| Third Party Defendants. | § | |

**REPORT AND RECOMMENDATION TO DISTRICT COURT
FOR DISTRICT COURT CASE NO. 3:07-CV-0321-K**

On May 17, 2004, The Heritage Organization, L.L.C., (the "Debtor") filed a voluntary

petition for relief under Chapter 11, thereby commencing the above-referenced bankruptcy case (the

"Case"). At the time the Case was filed, the Debtor was one of several plaintiffs in an action

pending in the 191st District Court of Dallas County, Texas, styled *AE Marketing et al. v. Jenkins-*

**Report and Recommendation**

*Baldwin Corp. et al.*, Cause No. 01-8347 (the "State Court Action"). The plaintiffs' petition in the State Court Action requested a jury trial.

In August, 2004, the Bankruptcy Court appointed a Chapter 11 Trustee in the Case. On October 29, 2004, the Trustee removed the State Court Action to this Court, where it was assigned Adv. Pro. No. 04-3624 (the "Proceeding"). After removal, certain parties declined to consent to this Court conducting the jury trial.[1] Those parties filed an Unopposed Motion to Withdraw Reference on February 16, 2007 (the "Motion").

On February 23, 2007, the District Court entered an order which referred the Motion to this Court for a status conference, if needed, and directed the submission of a report and recommendation addressing whether the reference should or must be withdrawn and, if so, whether the reference should be withdrawn now or only when this Court certifies that the parties are ready for trial. For the reasons set forth below, this Court respectfully recommends that the District Court immediately withdraw the reference so that it may preside over pre-trial matters and, ultimately, the jury trial.

A brief summary of the Proceeding will be helpful to an understanding of the nature of the claims asserted and the Court's recommendation that the reference be withdrawn. At the heart of the Proceeding lies a dispute between the purchasers of the Maxim Hotel and Casino in Las Vegas, Nevada (the "Casino") and the financiers of that purchase. In broad brush, the plaintiffs allege that plaintiff Premier Interval Resorts, Inc. ("Premier") bought the Casino using the proceeds of a loan

---

[1] On April 11, 2005, Meralex, L.P., Revanche L.L.C., Jenkins-Baldwin Corporation, Howard M. Jenkins (sometimes collectively referred to as "Meralex"), and the Chapter 11 Trustee filed statements consenting to a jury trial before the Bankruptcy Court. Similarly, on April 12, 2005, Hillel A. Meyers, Thomas Russell, and Donald G. Saunders consented to a jury trial before the Bankruptcy Court. However, the next day, AE Marketing, L.L.C., Premier Interval Resorts, Inc., Life Underwriters of America, Inc., Gary M. Kornman ("Kornman"), and Michael Kornman filed a notice declining to consent to a jury trial before the Bankruptcy Court.

from Meralex, L.P. ("Meralex").[2]  The loan was secured by a mortgage and deed of trust on the Casino.  To fund the loan to Premier, Meralex obtained a short-term bridge loan from the Debtor (which has since been repaid).  The Casino purchase closed in May, 1999, but within a few months, Premier defaulted on its mortgage payments to Meralex and Meralex or its successor ultimately foreclosed upon the Casino.

Accusations surrounding the rapid failure of the Casino transaction constitute the factual basis for the claims and counterclaims in the Proceeding.  Plaintiffs assert that Howard M. Jenkins ("Jenkins") facilitated the plaintiffs' default by failing to make a promised equity investment in Premier pursuant to a stock purchase agreement (the "Agreement") entered into between and among Meralex, Jenkins, and Premier.  In summary, the plaintiffs assert state law claims for fraudulent and negligent misrepresentation and breach of contract, and further request a declaratory judgment that Meralex cannot claim any post-foreclosure deficiency and that plaintiffs did not commit any fraud.

In turn, the defendants dispute the validity of the Agreement on several grounds and seek a post-foreclosure deficiency judgment, which they assert can be recouped and/or used to offset any liability to the plaintiffs.  The defendants also assert counterclaims arising under state law for negligent misrepresentation, fraud, breach of fiduciary duty, and civil conspiracy, and request certain declaratory relief with respect to the Casino transaction. The defendants also filed third party claims (grounded in state law) against Life Underwriters of America, Inc. (as managing member of plaintiff AE Marketing, L.L.C.) and several individual Premier shareholders for the purpose of obtaining (i) a declaratory judgment establishing the validity of a contract among the Premier shareholders that

---

[2] Meralex's general partner was Jenkins-Baldwin Corporation, and its limited partner was defendant Howard Jenkins.

would have limited Premier's ability to enter into the Agreement, and (ii) contribution and/or indemnity.

The Premier shareholders, in turn, filed state law claims against *all* of the other parties, alleging that the failure of the Casino transaction was by intentional design, as part of a tax avoidance strategy.  Accordingly, the Premier shareholders have pled state law claims for fraud, breach of fiduciary duty, and civil conspiracy, and have asked for a constructive trust to be imposed on any judgment awarded to any other party in the Proceeding.

In sum, the Proceeding involves multiple state law claims between multiple parties, all of which (save one) are non-debtors.  The Proceeding does not involve any causes of action created by the Bankruptcy Code.  While a party to the Proceeding, the Debtor is largely a bystander to much of the dispute.  Most importantly, the parties agree that there is a right to a jury trial, and several of the parties have declined to consent to the jury trial being conducted by this Court.  The Motion alleges that all parties agree that withdrawal of the reference is appropriate.  The parties confirmed their collective view that the reference must be withdrawn at a status conference held on March 19, 2007.

**Analysis**

Withdrawal of the reference is governed by 28 U.S.C. § 157(d), which provides, in relevant part, that the district court may withdraw, "in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  Under Local Rule 5011.1, the bankruptcy court is required to hold a status conference with the parties once a motion to withdraw the reference is filed.  Moreover, the local rule specifies several factors to be addressed by the bankruptcy court in connection with its report and recommendation to the district

court on the motion to withdraw the reference.

As relevant here, and as noted previously, this Court held a status conference with the parties to the Proceeding on March 19, 2007. After carefully considering each of the factors identified in Local Rule 5011.1, this Court recommends a withdrawal of the reference for the reasons discussed below.

Significantly, the parties agree that the reference of the Proceeding must be withdrawn because they are entitled to a jury trial and this Court cannot conduct such a jury trial without the parties' consent. Because a jury trial right exists and not all of the parties have consented to this Court conducting the jury trial, this Court agrees that a withdrawal of the reference of the Proceeding to the District Court is required. *See* 28 U.S.C. § 157(e). Stated most simply, the District Court must preside over the jury trial of the claims asserted in the Proceeding.

Moreover, consideration of the other factors identified in Local Rule 5011.1 suggests that withdrawal of the reference is appropriate here. No party to the Proceeding has requested a stay of the Proceeding pending the District Court's decision on the Motion. And, while there is currently a scheduling order in place in the Proceeding, the parties are not ready for trial. Finally, non-core issues predominate in the Proceeding.

In *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985), the Fifth Circuit stated that in ruling upon a motion to withdraw the reference, a court should consider several factors: (1) whether the matter involves core, non-core, or mixed issues; (2) whether or not there has been a jury demand; (3) the effect of withdrawal on judicial economy; (4) the effect of withdrawal on the goal of reducing forum shopping; (5) uniformity in bankruptcy administration; (6) the effect of withdrawal on fostering the economical use of the parties' resources; and (7) the

effect of withdrawal on the goal of expediting the bankruptcy process. Consideration of the additional *Holland America Ins. Co.* factors also suggests that withdrawal of the reference is appropriate here.

First, a withdrawal of the reference will neither enhance nor impair judicial economy, since under the facts of the Proceeding, the District Court is the only forum with the jurisdictional authority to afford the parties their Seventh Amendment right to a trial by jury. Moreover, neither the parties nor the Court have any concern that withdrawal of the reference will encourage forum shopping. Uniformity in bankruptcy administration and an expeditious bankruptcy process may be achieved even if the reference is withdrawn, in large part due to the present posture of the Case. Until recently, the dominant feature of the Case has been litigation by and against the Debtor's former clients (the "Client Claimants," some of whom are parties to the Proceeding) related to the allowance of the Client Claimants' proofs of claim against the estate and the collection of sums which the Client Claimants allegedly owe to the estate. Until recently, trial of that litigation had been considered a prerequisite to the formulation of a plan of reorganization for the Debtor.

However, the Trustee and the Client Claimants have now proposed a joint plan of reorganization for the Debtor which, if confirmed, would resolve the bulk of the litigation. A hearing to consider approval of the disclosure statement attendant to the proposed joint plan is scheduled in April, 2007. Under the terms of the proposed joint plan, the Proceeding will proceed to trial in the District Court, with the estate's potential liability capped by agreement. Withdrawal of the reference of the Proceeding should not impair the administration of the estate, as the Proceeding may no longer be a roadblock to the conclusion of the Case.

Accordingly, after consideration of all of the relevant factors, this Court concurs with the

parties and recommends that the District Court withdraw the reference of the Proceeding so that the parties may be afforded their Seventh Amendment right to a jury trial.

One last issue must be addressed – *i.e.*, the timing of the withdrawal of reference.  In the Motion, the parties have asked that this Court continue to preside over pre-trial matters and that the reference be withdrawn when the parties are ready for trial.  While this Court is prepared to preside over pre-trial matters if the District Court prefers, this Court recommends that the reference be withdrawn now, for the following reasons.  First, this Court believes that the District Court presiding over pre-trial matters will facilitate judicial economy and foster the economical use of the parties' resources.  The factual predicate for the claims involved in the Proceeding differs significantly from all of the other "client claims" with which this Court is intimately familiar.  This Court has become intimately familiar with the litigation involving the Client Claimants because there have been extensive pre-trial proceedings in connection with the Client Claimants' claims and the Trustee's (and certain other parties') objections to those claims.  In contrast, this Court has no extensive knowledge base with respect to the claims asserted in the Proceeding.  With one narrow exception, none of the other adversary proceedings in the Case have anything to do with the issues presented in the Proceeding.[3]  Moreover, by presiding over what this Court anticipates will be extensive pre-trial matters in the Proceeding,[4] the District Court should gain significant familiarity with the litigation, which will facilitate the ultimate trial of the Proceeding and conserve the parties' resources

---

[3] The exception is the alleged fiduciary or attorney/client relationship between Jenkins and Kornman, which appears to be disputed in both this Proceeding and in another adversary proceeding pending between Jenkins and Kornman. *See* Adv. Pr. No. 05-3699-BJH.  However, this Court has not yet had to rule upon the existence of such a relationship in the context of that other adversary proceeding.

[4] Given the procedural history of the Case and this Court's experience with all of the other adversary proceedings associated with the Case, this Court anticipates that there will be extensive pre-trial motions that will need to be heard in connection with the Proceeding.

in connection with that trial.

Second, the Debtor's role in the Proceeding is limited, and any judgment taken against the Debtor in the Proceeding may be capped in amount if the proposed joint plan is confirmed. Third, none of the claims asserted in the Proceeding derive from the Bankruptcy Code, and this Court's specialized knowledge of bankruptcy law will be of no help in administering the Proceeding.

Finally, the Court has considered one other factor in recommending that the reference be withdrawn now. Regrettably, very little has happened in the Proceeding since it was removed to this Court over two years ago. In large part, that has been due to discovery disputes between and among the parties, but largely involving the Debtor and certain affiliates of the Debtor, including the Debtor's principal, Kornman. Kornman is the subject of a criminal indictment in Case No. 3:05-CR-00298 pending in the Northern District of Texas (the "Criminal Case"), and has taken the Fifth Amendment with regard to discovery directed to him. Understandably, Meralex wishes to depose Kornman in connection with the Proceeding. Through counsel, Kornman has finally agreed to give a deposition within a short time following the conclusion of the trial of the Criminal Case, which is set to commence on April 9, 2007.[5] Accordingly, this road block to progress should be resolved shortly. Other discovery impediments have also been resolved, which should enable the parties to properly prepare for trial.[6]

At the March 19, 2007 status conference on the Motion, the parties indicated their belief that

---

[5]This Court has been assured that the April setting is a firm setting.

[6]At the status conference, the parties were asked why they had requested that the reference be withdrawn after this Court certified that the Proceeding was ready for trial instead of requesting an immediate withdrawal of the reference. The explanation offered related largely to this Court's knowledge of the discovery problems in the Case generally and the Proceeding specifically. While it is true that this Court is familiar with these discovery issues, they are not particularly complex and, hopefully, many of them have now been, or are about to be, addressed.

the Proceeding should be ready for what they estimate to be a three-week jury trial in early 2008. This Court sees no reason why the Proceeding should not be ready for trial then. In fact, the parties should be kept on track for such a trial setting. This Court believes that the District Court is in the best position to keep the parties on track for a trial in early 2008. Accordingly, this Court respectfully recommends that the District Court withdraw the reference now and preside over the Proceeding in its entirety.

Alternatively, if the District Court prefers that this Court continue to preside over pre-trial matters, this Court would respectfully request that a trial date in early 2008 be set by the District Court and that this Court be directed to manage pre-trial matters in order to meet that specific trial date. In short, this Court would like to avoid the potential delay associated with a withdrawal of the reference after it certifies that the Proceeding is ready for trial – *i.e.*, the reference is withdrawn but the District Court's docket will not accommodate a three-week jury trial for several months or the parties claim conflicts with a newly issued trial date.

Respectfully submitted this 23nd day of March, 2007.

Barbara J. Houser
Chief United States Bankruptcy Judge